IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STEPHEN MCBEAN,<br><br>*Defendant.* | Case No. 1:26-MJ-319 |

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Brianne Chevalier, a Special Agent with the Federal Bureau of Investigation (FBI), being duly sworn, hereby depose and state as follows:

### INTRODUCTION

1.     I am a Special Agent with the FBI.  I am assigned to a Cyber Crime Squad at the Washington Field Office.  I have been employed by the FBI since 2022.  While conducting or participating in criminal investigations, I have been involved in interviewing and debriefing witnesses and informants, conducting physical surveillance, tracing and analyzing Internet Protocol (IP) addresses, tracing and analyzing financial transactions, analyzing telephone pen registers, collecting and analyzing evidence, and preparing and executing search warrants.  I have received both formal and informal training in the investigations of sex crimes, child exploitation, child pornography, and computer crimes. I have participated in investigations of persons suspected of violating federal laws pertaining to 47 U.S.C. § 223.

2.     I submit this affidavit in support of an application for a criminal complaint and arrest warrant charging Stephen MCBEAN with aiding and abetting the illegal publication of intimate visual depictions of identifiable adults, in violation of 47 U.S.C. § 223(h)(2)(A) and 18

1

U.S.C. § 2, in connection with his knowing distribution of stolen intimate visual depictions to an online criminal forum (hereinafter, "Website A"), and their subsequent publication on that forum.

3.     The facts and information in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers. This affidavit is intended to show simply that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## Background on the Take it Down Act

4.     The Tools to Address Known Exploitation by Immobilizing Technological Deepfakes On Websites and Networks Act, also known as the "Take It Down Act," Pub. L. 119-12, was enacted into law in May 2025. The Take It Down Act was intended, *inter alia*, to combat (i) so-called "revenge porn," or pornography posted of an intimate partner contrary to the partner's wishes, and (ii) nonconsensual digital forgeries, or materials created to simulate a real person that either are not genuine images of the person, or depict the person in contexts that are computer-generated or altered. *See generally* Darlene Superville, *Trump signs Take it Down Act, bill combating nonconsensual deepfakes and revenge porn*, Associated Press, May 19, 2025, available at https://www.pbs.org/newshour/politics/watch-live-trump-signs-take-it-down-act-bill-combating-nonconsensual-deepfakes-and-revenge-porn (last accessed August 10, 2026).

5.     The Take It Down Act includes a number of prohibitions regarding the intentional disclosure of nonconsensual intimate visual depictions, including, as relevant here:

> A. the use of an interactive computer service to knowingly publish an intimate visual depiction of an identifiable individual who is not a minor if
>
> (i)     the intimate visual depiction was obtained or created under circumstances in which the person knew or reasonably should have known the identifiable individual had a reasonable expectation of privacy;
>
> (ii)    what is depicted was not voluntarily exposed by the identifiable individual in a public or commercial setting;

(iii)   what is depicted is not a matter of public concern; and

(iv)   publication of the intimate visual depiction—

 I.   is intended to cause harm; or

 II.   causes harm, including psychological, financial, or reputational harm, to the identifiable individual.

*See* 47 U.S.C. § (h)(2)(A).

6. An identifiable individual means an individual (i) who appears in whole or in part in an intimate visual depiction; and (ii) whose face, likeness, or other distinguishing characteristic (including a unique birthmark or other recognizable feature) is displayed in connection with such intimate visual depiction. *See* 47 U.S.C. § 223(h)(1)(C).

7. Pursuant to 15 U.S.C. § 6851(a)(5):

A. A visual depiction, as that term is defined in section 2256(5) of title 18, is one that depicts—

 (i)   the uncovered genitals, pubic area, anus, or post-pubescent female nipple of an identifiable individual; or

 (ii)   the display or transfer of bodily sexual fluids—

  (I)   on to any part of the body of an identifiable individual;

  (II)   from the body of an identifiable individual; or

  (III)   an identifiable individual engaging in sexually explicit conduct and

B. includes any visual depictions described in subparagraph (A) produced while the identifiable individual was in a public place only if the individual did not—

 (i)   voluntarily display the content depicted; or

 (ii)   consent to the sexual conduct depicted.

8. Pursuant to 47 U.S. Code § 230(f)(2), the term "interactive computer service" means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system

3

that provides access to the Internet and such systems operated or services offered by libraries or educational institutions.

## PROBABLE CAUSE

### A. Investigation of Website A

9.     Since approximately 2022, the FBI has been investigating Website A, a criminal online forum that allows users to post and sell access to nude, sexually suggestive and/or sexually explicit images and videos of minors and adults.  Among other things, Website A promotes a hack-for-hire service, in which users can pay hackers to access victims' online accounts without their consent and obtain illicit images.

10.   As of this writing, the FBI has identified thousands of victims, including minors, whose illicit images and videos were leaked, hacked, or obtained via extortion, and posted on Website A.

### B. Website A's Hack-for-Hire Service

11.    Among other things, Website A offers a "Snaphack Service" for purchase. According to posts on Website A, the forum has worked "for years now" with "highly skilled individuals that can hack Snapchat accounts."[1]  According to the post, "The girls you see from '[Website A] Exclusive 2024' are hacked by the group of people that works for [Website A]."

12.    Based on law enforcement's review of Website A, the "[Website A] Exclusive 2024" album contains sexually explicit images and videos of minors and adults, some of whom

---

[1] Snapchat, owned by Snap Inc., is an Internet-enabled social media and messaging application, wherein users can exchange messages and media files.  In addition, users can privately store media files in a "My Eyes Only" folder – a secure, passcode-protected folder within the application designed to keep Snaps and Stories private and hidden.

have been positively identified by law enforcement and who reported to law enforcement that their illicit images were taken from their Snap accounts and posted to Website A without their consent.

13.    The FBI's investigation of Website A also revealed that users and administrators use certain terms to refer to the methods of collecting and posting illicit content. For example, a "win" refers to obtaining explicit images of a female. The term "BM" refers to blackmail (i.e., using some type of extortion to coerce a female into creating images). A "collection" is a group of images and videos sold as one group, typically depicting a single victim (often marketed and sold using the victim's full name), or sometimes depicting a group of victims with some commonality. The link between multiple victims in a single group includes, for example, a single offender who victimized all the victims. Furthermore, once an offender hacked a victim's online account, they would often change the victim's display name to include a reference to Website A.

14.    During its investigation, the FBI learned that an IP address registered to MCBEAN was used to gain unauthorized access to the Snap account of AV-2,[2] whose display name was changed to include a reference to Website A. Furthermore, on the same day that an individual (believed to be MCBEAN) accessed AV-2's Snap account from MCBEAN's IP address, sexually explicit images and videos of AV-2, allegedly taken when AV-2 was a minor, were stolen from AV-2's Snapchat account and posted for sale on Website A.

## C. Hack of AV-2's Snap Account

15.    Snap records for AV-2's account revealed that on December 25 and 26, 2025, AV-2's account was accessed multiple times from IP address 174.166.155.104 and her display name was modified to include a reference to Website A.

---

[2] The full name and identity of AV-2 is known to law enforcement but redacted here to protect victim privacy.

5

16.    On December 26, 2025 – the same day that AV-2's account was accessed from MCBEAN's IP address – Website A published an album containing 59 images, 17 videos, and 16 "sex tapes" depicting AV-2. The title of the album was AV-2's first and last name and the post included a screenshot of a Snapchat account with AV-2's name as the display name and "[Website A]" as the Snapchat handle. On or about June 1, 2026, the FBI downloaded the contents of this album in the Eastern District of Virginia. I reviewed the contents of the album and in doing so observed images and videos showing, among other things, intimate visual depictions of AV-2, including images and videos with her genitals exposed to the camera and AV-2 engaged in sexually explicit conduct with another individual, who was also purportedly under the age of 18 when the video was originally made.

17.    The AV-2 album became a featured collection on Website A's homepage, where it was listed as a "[Website A] Exclusive." After clicking on the album for AV-2, users are directed to a page containing AV-2's identifying information and content, along with the published date. AV-2's information is also displayed on the "Snap Service" page as an example of a "Vouch," or proof of a successful hack. The information includes AV-2's true phone number, email address and date of birth in 2006. She was 19 years old when her Snap account was hacked.

18.    AV-2 was interviewed by law enforcement and stated that she did not give permission for anyone to access her Snap account and take her images and videos. She also stated that both she and the other individual depicted in the videos were under the age of 18 when the sexually explicit videos of them were created.

19.    According to AV-2, the images and videos taken from her Snap account and posted on Website-A have since been posted to several other websites. AV-2 also reported that she has

6

since received near-daily friend requests and messages from unknown individuals sending her links to her illicit content online.

### D. Identification of MCBEAN

20.     As discussed above, IP address 174.166.155.104 was used multiple times on December 25 and 26, 2025, to gain access to the Snap account belonging to AV-2. On the same day that this IP address was used to access AV-2's Snap account, nude and sexually explicit images and videos of AV-2 stored in her Snap account were posted for sale on Website A.

21.     According to records obtained from Comcast, IP address 174.166.155.104 has the following subscriber information:

- Subscriber: Stephen McBean
- Service Address: [redacted] Irvington, NJ 07111
- Telephone number: xxx-xxx-7347
- IP Address Lease Grant: September 18, 2025
- IP Lease Expiration: February 24, 2026

22.     According to Snap records, this same IP address was also used for app authentication events by other Snap accounts that had their display names changed to include a reference to Website A.

23.     On August 11, 2026, the FBI executed a federal search warrant at MCBEAN's residence in Irvington, New Jersey for evidence related to the crimes discussed herein. MCBEAN was present at the search warrant and agreed to an interview with law enforcement. He was read his Miranda warnings. During the interview, MCBEAN admitted that he hacked AV-2's Snap account, stole her intimate images and videos, and sold them to Website A. He also admitted to conducting other, similar, hacks of victims' online accounts, stealing their intimate images and videos, and selling them to Website A.

7

## CONCLUSION

24.     Based on the above information, there is probable cause to believe that MCBEAN accessed, without authorization, AV-2's Snap account in December 2025 and stole intimate visual depictions of AV-2 and another individual.  There is also probable cause to believe that MCBEAN then provided the stolen intimate visual depictions to Website A for the purpose of posting them for sale.  And as described above, Website A did, in fact, post for sale the stolen intimate visual depictions of AV-2, resulting in the circulation of AV-2's intimate images online and the near-daily harassment that AV-2 has received online.

25.     Therefore, I submit there is probable cause to believe that between at least on or about December 25, 2025, and on or about June 1, 2026, in the Eastern District of Virginia and elsewhere, Stephen MCBEAN did aid, abet, counsel, command, induce, or procure the commission of the following offense:

knowingly publish an intimate visual depiction of an identifiable victim, AV-2, an adult, in interstate and foreign commerce through the use of any interactive computer service, without the consent of AV-2, where the intimate visual depiction was obtained and created under circumstances under which the defendant, STEPHEN MCBEAN, knew and reasonably should have known AV-2 had a reasonable expectation of privacy, and what was depicted in the intimate visual depiction was not voluntarily exposed by AV-2 in a public and commercial setting and was not a matter of public concern, and the publication of the intimate visual depiction caused, and was intended to cause harm to AV-2.

8

All in violation of 47 U.S.C. § 223(h)(2)(A) and 18 U.S.C. § 2.

Respectfully submitted,

Brianne Chevalier
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to in accordance with Fed. R. Crim. P. 4.1 by telephone on August 11, 2026:

The Honorable William E. Fitzpatrick
United States Magistrate Judge
Alexandria, Virginia

9